# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **D.M.-D.**

**No. 19-0716** (Kanawha County 15-JA-366)

**FILED**

**May 26, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother H.M., by counsel Matthew A. Victor, appeals the Circuit Court of Kanawha County's July 24, 2019, order terminating her parental rights to D.M.-D.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Steven R. Compton, filed a response in support of the circuit court's order. The guardian ad litem, W. Jesse Forbes, filed a response on behalf of the child also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her parental rights by (1) denying her request for an improvement period, (2) stopping her contact with the child and denying her request of post-termination visitation, and (3) finding that her mental illness contributed to the abuse and/or neglect of the child.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In February of 2016, the DHHR filed an abuse and neglect petition alleging that petitioner's ongoing mental health issues exacerbated the child's "behavioral and psychological problems" after she exercised visits and contact with him.[2] At the status hearing in May of 2016, the circuit court denied petitioner's request for contact with the child, finding that such contact could be

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2]Petitioner and the child were the subjects of an earlier child abuse and neglect proceeding during which petitioner was ultimately permitted to retain her parental rights and the child was placed into a legal guardianship with foster parents.

detrimental to the child's welfare, especially considering that she continued to inappropriately parent the child during her visits.

Many months passed during which the circuit court held status hearings on the child's various placements and progress in treatment. Petitioner completed her psychological evaluation in May of 2017, after which she was diagnosed with paranoid schizophrenia. After the DHHR was unsuccessful in securing specialized out-of-state treatment for the child, the DHHR placed him in a psychological ward at a hospital after he attempted to commit suicide in August of 2017. The next month, the child was placed in a specialized facility in Virginia, where he made numerous attempts to commit suicide or harm others.

In September of 2018, the DHHR filed an amended petition alleging that petitioner failed to comply with mental health treatment resulting in her inability to parent the child. Specifically, the DHHR alleged that petitioner denied having mental health problems despite her prior diagnosis of a "psychotic disorder" in the previous child abuse and neglect proceeding; bizarre ideation about Jehovah's witnesses and the Ku Klux Klan killing her other son who committed suicide in 2008; and erratic behaviors such as tearing out the electrical wiring in her home because she believed it was a surveillance system. The DHHR further alleged that during the previous child abuse and neglect proceeding, petitioner posted threatening remarks on social media about the DHHR and was found by authorities with a loaded gun in her vehicle outside of DHHR offices.[3] Also, in 2011, petitioner was convicted of a misdemeanor resulting from her threats to kidnap a circuit court judge's daughter. Moreover, the DHHR alleged that petitioner was expelled from the April 18, 2018, hearing for yelling and cursing at the presiding judge and later posted nonsensical threats on social media against the assigned assistant prosecuting attorney, which resulted in her criminal charge of intimidation of a public official.

After the filing of the amended petition, the circuit court held adjudicatory hearings in October of 2018 and April of 2019, wherein the DHHR presented evidence that petitioner's ongoing severe mental health issues affected her ability to parent the child. The psychologist who performed petitioner's parental fitness evaluation testified that petitioner's contact with the child would be detrimental to him due to her "paranoid reactions, fearful reactions, engaging in erratic behavior based on [her] delusions," and an increased risk of physical harm to the child due to her "misperceptions or erratic behavior." The psychologist opined that petitioner's mental health conditions inhibited her ability to parent the child and that petitioner refused to comply with appropriate mental health treatment. Moreover, the DHHR worker testified that the then fifteen-year-old child told the worker that he did not want to see petitioner if her mental illness was untreated. The foster father J.W. also testified that the child did not want to see petitioner. Petitioner testified that she suffered from anxiety but had no problems with mental psychosis despite her admissions to hearing voices in her electrical outlets. Based upon the evidence presented, the circuit court adjudicated petitioner as an abusing parent. Petitioner moved for a post-adjudicatory improvement period, but the circuit court denied the motion finding that petitioner had "years of historical non-compliance with treatment" for her "long active psychosis" and petitioner's lack of insight into her mental health problems meant that timely improvement was

---

[3]Petitioner was not criminally charged as a result of these actions.

impossible. The circuit court also denied petitioner's request for visitation finding that her contact would be detrimental to the child.

The circuit court held a final dispositional hearing on July 1, 2019. Petitioner failed to appear, but counsel represented her. Petitioner moved for a post-dispositional improvement period, but the circuit court denied it finding that petitioner did not have the ability to benefit from the DHHR's services due to her severe mental health conditions. Further, the circuit court found that petitioner's contact with the child would be detrimental to his wellbeing and denied petitioner's motion for post-termination visitation. The circuit court concluded that because petitioner failed to admit that she had mental health problems or rectify the circumstances that led to the filing of the previous child abuse and neglect matter nearly ten years prior, there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future. Ultimately, the circuit court terminated petitioner's parental rights in its July 24, 2019, order. Petitioner now appeals that order.[4]

The Court has previously held:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Upon review, this Court finds no error in the proceedings below.

On appeal, petitioner argues that the circuit court erred when it denied her request for an improvement period. We disagree.

West Virginia Code § 49-4-610(2)(B) provides that the circuit court may grant a parent a post-adjudicatory improvement period when the parent "demonstrates, by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period." "This Court has explained that 'an improvement period in the context of abuse and neglect proceedings is viewed as an opportunity for the miscreant parent to modify his/her behavior so as to correct the conditions of abuse and/or neglect with which he/she has been charged.'" *In re Kaitlyn P.*, 225 W.

---

[4]The father is deceased. The child's foster parents retain guardianship, but the DHHR has placed the child in a specialized long-term inpatient treatment facility. The permanency plan is guardianship by the foster parents.

Va. 123, 126, 690 S.E.2d 131, 134 (2010) (citation omitted). However, the circuit court has discretion to deny an improvement period when no improvement is likely. *In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002). Further, we have previously held that

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted). Here, the evidence below established that petitioner refused to acknowledge that she had an ongoing severe mental health problem that prevented her from properly parenting the child. Indeed, as of the dispositional hearing, petitioner claimed that she suffered only from anxiety and no other mental health conditions despite testifying that she heard voices in her electrical outlets. Without the acknowledgement of a problem to address, granting petitioner an improvement period would have been futile. Accordingly, we find no error in the circuit court's denial of petitioner's request for an improvement period.

Next, petitioner argues that the circuit court improperly stopped her contact with the child and denied her request of post-termination visitation. In support, petitioner argues that the circuit court improperly relied solely upon her psychological evaluation without considering the results of the child's psychological evaluation and improperly considered allegations "having nothing to do with the exposure of the [c]hild to immediate danger." Further, petitioner argues that the child's behavioral and psychological problems have only worsened while in the DHHR's custody, despite the cessation of petitioner's visitations with the child. We find that petitioner is entitled to no relief.

We have previously held that

> "[w]hen parental rights are terminated due to neglect or abuse, the circuit court may nevertheless in appropriate cases consider whether continued visitation or other contact with the abusing parent is in the best interest of the child. Among other things, the circuit court should consider whether a close emotional bond has been established between parent and child and the child's wishes, if he or she is of appropriate maturity to make such request. The evidence must indicate that such visitation or continued contact would not be detrimental to the child's well being and would be in the child's best interest." Syl. Pt. 5, *In re Christina L.*, 194 W.Va. 446, 460 S.E.2d 692 (1995).

Syl. Pt. 11, *In re Daniel D.*, 211 W. Va. 79, 562 S.E.2d 147 (2002). Here, the record reveals that the child's behavior worsened throughout the proceedings, resulting in his unfortunate removal from numerous placements due to his severe psychological and behavioral problems. However, petitioner ignores the fact that the circuit court ceased her visitations with the child after it was reported that she encouraged him to be disruptive in his placements and that his behaviors worsened after visitations. Further, although petitioner insists that her threats to a circuit court judge, the assistant prosecutor, and the DHHR did not place the child in imminent physical danger

4

or impact his psyche, she fails to acknowledge that the circuit court shielded the child from such emotional abuse by restricting contact with petitioner. Due to her untreated mental illness, petitioner lacks the ability to appreciate the circuit court's intervention to protect the child from her unstable, violent outbursts and erratic behaviors. Moreover, the record contains numerous reports about the child's diagnosis and progress in treatment, and, therefore, the circuit court was privy to information regarding the child's mental health when making its decision regarding continued contact with petitioner. Additionally, the DHHR worker and the foster father testified that the child did not want contact with petitioner. Ultimately, the circuit court weighed petitioner's request for contact with the child against the child's best interests, and we find no error in the circuit court's decision to deny petitioner contact during the course of the proceedings, as well as any future contact with the child, as it is clearly not in his best interest.

Next, petitioner argues that the circuit court improperly found that her "perceived mental health shortcomings prevented her from being a parent" and failed to demonstrate how such "perceived mental illness" constituted abuse and neglect of the child. However, we find no merit to this argument.

"'Abusing parent' means a parent, guardian, or other custodian, regardless of his or her age, whose conduct has been adjudicated by the court to constitute child abuse or neglect as alleged in the petition charging child abuse or neglect." W. Va. Code § 49-1-201. A "neglected child" is a child "whose physical or mental health is harmed *or threatened* by a . . . failure or inability of the child's parent . . . to supply the child with necessary . . . supervision." W. Va. Code § 49-1-201, in part (emphasis added). Further,

> "W.Va. Code [§ 49-4-601(i)], requires the [DHHR], in a child abuse or neglect case, to prove 'conditions existing at the time of the filing of the petition . . . by clear and convincing [evidence].' The statute, however, does not specify any particular manner or mode of testimony or evidence by which the [DHHR] is obligated to meet this burden." Syllabus Point 1, *In Interest of S.C.*, 168 W.Va. 366, 284 S.E.2d 867 (1981).

Syl. Pt. 1, *In re Joseph A.*, 199 W. Va. 438, 485 S.E.2d 176 (1997) (citations omitted). At the outset, we note that, contrary to petitioner's belief that the circuit court merely "perceived" that she suffered from a mental illness that impacted her ability to parent, the overwhelming evidence below shows that petitioner suffered from severe psychosis, including paranoid schizophrenia, which resulted in her paranoid delusions and threatening, unstable behavior. Numerous records and testimony established that petitioner, in fact, suffers from diagnosed mental illnesses that impact her ability to perceive reality. Therefore, the circuit court's finding that petitioner was severely mentally ill is wholly supported by the record. Likewise, we find that the circuit court properly adjudicated petitioner as an abusing parent based on the evidence that her mental illness resulted in her neglect of the child, as she could not provide adequate supervision or a stable home environment for him. At the adjudicatory hearing, the psychologist testified that petitioner's delusions previously caused her to tear out electrical wiring in her home while the child was with her, exposing him to the danger of fire. He further testified that she divulged worrying that the child had implants in his ears when she picked him up from school. The psychologist opined that petitioner's contact with the child caused him emotional harm due to her "paranoid reactions,

fearful reactions, [and] engaging in erratic behavior based on [her] delusions." Thus, we find no error in the circuit court's findings.

We likewise find no error in the circuit court's termination of petitioner's parental rights. West Virginia Code § 49-4-604(b)(6) provides that a circuit court may terminate a parent's parental rights upon findings that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the welfare of the child. A court may find that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected" when "[t]he abusing parent . . . [has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health, or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child." W. Va. Code § 49-4-604(c)(3). Here, the cumulative evidence in the record shows that petitioner's mental health conditions have continued unabated; she remains unwilling to accept responsibility for addressing her severe mental illness or the consequences of her actions; and she refuses to admit to the conditions which led to the filing of both petitions—her inability to parent her child due to untreated severe mental illness. Critically, petitioner was offered an array of services in her prior abuse and neglect proceeding but failed to fully comply with those services and address her severe mental illness. It appears from the record that any services petitioner was offered or participated in had no remedial effect and that the conditions of the prior child abuse and neglect proceeding continued unabated. It is clear that petitioner does not have the ability to understand how her mental illness negatively impacts her ability to parent the child and that she failed to follow through with rehabilitative services designed to reduce or prevent the child's abuse and/or neglect. The circuit court found that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected and that termination was necessary for the welfare of the child, and those findings are supported by the above-referenced evidence. Accordingly, we find no error in the circuit court's termination of petitioner's parental rights.

Lastly, we recognize that the child has been placed in numerous facilities due to his severe psychological and behavior problems and that proceedings regarding his placement in circuit court are still ongoing. As such, this Court reminds the circuit court of its duty to establish permanency for the child. Rule 39(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings requires:

> At least once every three months until permanent placement is achieved as defined in Rule 6, the court shall conduct a permanent placement review conference, requiring the multidisciplinary treatment team to attend and report as to progress and development in the case, for the purpose of reviewing the progress in the permanent placement of the child.

Further, this Court reminds the circuit court of its duty pursuant to Rule 43 of the Rules of Procedure for Child Abuse and Neglect Proceedings to find permanent placement for a child within twelve months of the date of the disposition order. As this Court has stated,

> [t]he [twelve]-month period provided in Rule 43 of the West Virginia Rules of Procedure[] for Child Abuse and Neglect Proceedings for permanent placement of an abused and neglected child following the final dispositional order must be

6

strictly followed except in the most extraordinary circumstances which are fully substantiated in the record.

*Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 6. Moreover, this Court has stated that

> [i]n determining the appropriate permanent out-of-home placement of a child under [West Virginia Code § 49-4-604(b)(6)], the circuit court shall give priority to securing a suitable adoptive home for the child and shall consider other placement alternatives, including permanent foster care, only where the court finds that adoption would not provide custody, care, commitment, nurturing and discipline consistent with the child's best interests or where a suitable adoptive home can not be found.

Syl. Pt. 3, *State v. Michael M.*, 202 W. Va. 350, 504 S.E.2d 177 (1998). Finally, "[t]he guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the child is placed in a permanent home." Syl. Pt. 5, *James M. v. Maynard*, 185 W. Va. 648, 408 S.E.2d 400 (1991).

For the foregoing reasons, we find no error in the decision of the circuit court, and its July 24, 2019, order is hereby affirmed.

Affirmed.

**ISSUED**: May 26, 2020

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison

**NOT PARTICIPATING:**

Justice Margaret L. Workman